MACK et al. v. PORTER.

(Circuit Court of Appeals, Fourth Circuit. Feburary 4, 1896.)

No. 145.

1. EVIDENCE—RELEVANCY.

One P. brought an action against M. and B., upon a contract alleged to have been made by parol on December 31, 1891, at a conference between them and one V., the president of the E. Bank, in regard to certain indebtedness of P. to the other parties, and to the sale and purchase of stock owned by P. and pledged to the various other parties. The defendants denied the making of the contract. Upon the trial, the court excluded evidence, offered by defendants, as to who prepared an agreement, previously made, between M. and the E. Bank about some of the stock, which agreement was admitted; evidence as to negotiations, previous to December 31, 1891, between V. and one L. about a sale of the stock; evidence as to other transactions between P. and M., the only purpose of which would be to show the feeling between them; evidence to explain testimony given for plaintiff, from which an inference adverse to defendants might be drawn, but of which an explanation had been given in other testimony admitted; evidence that P., long previous to December 31, 1891, had misrepresented certain facts material to the alleged contract, as to which, however, there was no proof that, at the time of the contract, the defendants were ignorant or misled; evidence of a threat, made by B. to P., in a conversation prior to December 31, 1891, such threat having no relation to the alleged contract; and evidence of conversations, previous to December 31, 1891, in which M. said that he would not make such a contract as he was alleged to have made. *Held*, that there was no error in any of such rulings, and that the evidence offered was not admissible as part of the res gestae.

2. PRACTICE—AMENDING PLEADINGS ON TRIAL.

It is not error to permit amendments of the declaration, during a trial, to conform the pleading to the proof upon matters forming part of the original cause of action, and introducing no foreign substantive cause; nor to refuse a continuance because of such amendments, in the absence of any proof that the same were a surprise, or required the introduction of testimony from witnesses not present.

In Error to the Circuit Court of the United States for the District of West Virginia.

G. B. Caldwell (of Caldwell & Caldwell) and Chas. V. Meredith, for plaintiffs in error.

W. P. Hubbard (Harry M. Russell on the brief), for defendant in error.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

BRAWLEY, District Judge.   This case is before us on a writ of error to the circuit court of the United States for the district of West Virginia, and grows out of exceptions taken and allowed at the trial, wherein John Porter, the defendant in error, was plaintiff, and recovered a verdict against John M. Mack and G. B. Boren, in an action of assumpsit on a special oral contract, originally brought in the circuit court of Hancock county, W. Va., and removed into the United States court on the ground of diversity of citizenship.   The record discloses 18 exceptions, 13 of which relate to the rejection and exclusion of testimony, and 5 to the allowance of amendments to the declaration at the time of the trial and to the refusal to grant a continuance on account thereof.

In the year 1891 John Porter held a controlling interest in the stock of a corporation engaged in the manufacture of brick in Hancock county, W. Va., known as the John Porter Company, the name of which, by proceedings subsequent to the transactions hereinafter mentioned, was changed to the Mack Company.   He had sold and conveyed to said corporation certain real estate, upon which there were two liens, that will be hereafter designated as the "Stewart Lien" and the "Silvers Lien," the amount due thereon being about $14,000, for which he was liable; and, to secure said company against loss by reason of said liens, he had given his note, and pledged stock of the John Porter Company to the amount of $15,000.   He was indebted to G. B. Boren, and had pledged $15,000 of the stock of said company as security; also, to the Exchange Bank of Wheeling, which held, as security, $71,000 of the same stock.   He had likewise, before that time, become indebted to John M. Mack, who had held some of the same stock as collateral to secure him as indorser, but this stock had been sold prior to the events now to be related, leaving an indebtedness of about $4,000 and some hard feelings.   He was likewise indebted to the John Porter Company, on an open account, then unliquidated, but subsequently ascertained to amount to about $400.   The stock held by the Exchange Bank had been transferred to one Jones, its cashier, as trustee, and stood in his name.   The defendant Mack had made some effort, without result, to purchase this stock from Vance, the president of the bank, who was friendly to Porter, and unwilling to sell without his consent; and, as Porter had an equity of redemption, the bank had given to James M. Porter, a kinsman of the plaintiff, a power of attorney to negotiate its sale.   Thus matters stood when, by an appointment arranged by Vance, the president of the bank, an interview was had at an hotel in Steubenville, Ohio, on December 1, 1891, between John Porter, James M. Porter, Vance, Boren, and De Haven Lance, who represented Mack.   It was at that interview that the contract which gave birth to this controversy is alleged to have been made.   The accounts given of this interview and contract are hazy and conflicting; but as it has been passed upon by a jury, and a verdict in favor of the plaintiff, Porter, has been sustained by the trial judge, it is beyond the province of this court to open up any question as to the merits of the respective contentions.   The verdict of the jury settles

the point that a contract was made, as alleged by the plaintiff in the action below; and, unless some reversible error is discovered in the proceedings leading to it, such verdict must stand.

On the part of John Porter it is contended that he was unwilling to part with his interest in the stock held by the bank, and in the stock held by Boren, unless he could sell all, and close out at the same time all interest in the John Porter Company, and be freed from all liability connected with it; and that the result of the negotiations on that day was an agreement that the bank should sell to Mack the stock held by it at a price which would give him $41,000, that Boren should take the stock held by him at 65 cents on the dollar, that the stock pledged to the John Porter Company should become the property of that company, and that he should be relieved of all liability on account of the Stewart and Silvers liens, and of the indebtedness against him on the books of that company, and that he should also be relieved of the indebtedness growing out of the previous transactions with Mack. On the part of the defendants, Mack and Boren, it is contended that the negotiations had no other object, and had no other result, than an agreement that Boren should take the stock held by him at 65 cents on the dollar, and that Mack should purchase the stock held by the bank at a figure to be settled between the bank and himself; the bank only stipulating with Porter that he should receive $41,000.

At this date the Stewart and Silvers liens were not due. Subsequently, when they fell due, they were paid by the Mack Company, which, in January, 1893, brought suit against John Porter, and recovered judgment against him for the sum of $14,772.27, this being the amount of the indebtedness on account of those liens and the open account. A credit of $5,700 as of February 21, 1893, being the proceeds of the sale of the pledged stock, was made on said judgment, and execution issued against the property of John Porter for the difference, which, with costs, amounts to $10,443.60. It is to recover this sum that this suit is brought, against Mack and Boren, upon the contract hereinabove referred to; and the case came on for trial before Judge Jackson and a jury, on the 15th of April, 1895, resulting in a verdict for the plaintiff for the amount claimed. The exceptions taken upon such trial are now to be considered,—those relating to the exclusion of testimony, each in its order; those relating to the allowance of amendments during the progress of the trial being considered together. And, to a proper apprehension of the bearing of the testimony, it may be well to state that the question submitted to the jury, and the only question, was whether a contract had been made at Steubenville, Ohio, on the 1st of December, 1891, as maintained by the plaintiff and denied by the defendants.

The first exception assigned as error relates to the exclusion of certain testimony respecting the preparation of a certain paper, which was offered by the defendant, and admitted in evidence. This paper is an agreement, bearing date and executed on December 2, 1891, between the Exchange Bank of Wheeling and John

M. Mack, whereby the said bank agreed to sell to Mack the 710 shares of stock of the John Porter Company standing in the name of John J. Jones, trustee, and Jones, the trustee, at the foot of the agreement, makes a declaration that he holds the stock for the use and benefit of the Exchange Bank of Wheeling. The court excluded testimony which was offered to show that the original draft of this agreement was prepared by the attorney of the bank, and that some additions were made by the attorney for Mack. We fail to see any possible relevancy to the real question at issue which this rejected testimony could have. When Porter consented to the sale and transfer of the stock, and received from the bank the purchase money therefor, the details of the transfer by the bank to another purchaser, and the terms of payment, were of no concern to him. In so far as this testimony tended to show that Mack was dealing with the bank alone, the defendant has had the benefit of it, with all the inferences that could possibly and legally flow from it by the admission of the paper itself, which, on its face, purports to be an agreement between him and the bank alone. It was of absolutely no consequence whether said agreement was prepared by the attorney for the bank or the attorney for Mack, by either or neither, or by both conjointly. There is no error in the rejection of the proffered testimony.

The second, third, and fourth exceptions refer to the amendments, and will be considered hereafter.

The fifth exception is to the ruling out of the question: "At whose solicitation?" asked of the witness Lance, by the defendant's counsel, when he was giving an account of some negotiations for the purchase of the stock from Vance, anterior to the 1st of December. Whether Lance had made an effort to buy, or whether Vance had made an effort to sell, prior to that date, can throw no light upon what took place at that meeting, as to whether the contract alleged was then entered into or not. If offered for the purpose of showing that Lance would have no dealings with Porter, it is negatived by the fact that he did have dealings with him; that is to say, that he did go to the meeting, on December 1st, at Steubenville, for the purpose of some negotiation respecting this stock. Whether those negotiations eventuated in the contract declared on is another question. There is no error in the rejection of the question.

The sixth, seventh, eighth, and ninth exceptions are to the refusal to admit testimony concerning certain offers made by Mack to Porter in regard to a transaction between them, long since closed, growing out of the sale of some stock pledged by Porter to secure a debt for which Mack was an indorser, and on account of which Porter had, or thought he had, a grievance. It is not pretended that this transaction had any relation to the negotiations of December 1st, or could throw any light upon the agreement alleged as of that date. The utmost effect of that kind of testimony would be to show that Mack was a benevolent man, and not a harsh man, and that Porter's alleged grievance was imaginary.

These were not questions which were at issue. The matter in dispute was whether a contract was made on December 1st. The fundamental principles of the law of evidence confine testimony to the point at issue, and to facts from which some reasonable presumption or inference affecting the matter in dispute may be drawn. If testimony had been offered by the plaintiff, the tendency of which was to create a prejudice against the defendant, by showing that, in some other transaction, and at some other time, the defendant had done the plaintiff some injury, the proper course would have been to object to that testimony. The record here discloses that whatever was said by Porter in derogation of Mack was brought out on the cross-examination by the counsel for the defendant himself. In excluding the testimony which tended to draw away the minds of the jury from the real question at issue, no error was committed.

The tenth, twelfth, and thirteenth exceptions relate to the exclusion of testimony offered in explanation of a conversation between Stewart and Boren, one of the defendants, wherein Stewart relates that Boren had said that "we" were going to pay the liens. To meet the argument that plaintiff's counsel might be expected to make, that, in using the pronoun "we," Boren meant Mack and himself, defendants proved, by Boren, that he meant the John Porter Company, that the meeting with Stewart was altogether for the purpose of attending to the business of the company, and that he had no affairs of his own in connection with Stewart. Counsel for the defendants then offered in evidence the proceedings of the board of directors on May 9, 1891, showing that at that time it was agreed between the company and John Porter that the company would assume and pay the Stewart and Silvers liens, and that Porter had transferred to the company, for its indemnification, 150 shares of the stock of the company. A copy of the minutes of this meeting was put in evidence without objection. An offer was then made to prove something that was said by Porter during the meeting, for the purpose of explaining the conversation between Boren and Stewart. This was objected to, and the court sustained the objection. The witness was then asked some further questions concerning this meeting, whereupon the court, of its own motion, said: "You cannot prove this. I will allow you to prove the simple fact that, before that meeting of Mr. Boren, in January, 1892, with Mr. Stewart, the John Porter Company had assumed to pay off these Stewart and Silvers liens." Upon an exception being taken to this ruling, the court said: "Then I will exclude it all." The record does not show whether the testimony, already in without objection, was excluded or not, and it does not appear that the jury was directed to disregard it. Assuming that it was, to what extent did such exclusion work injury to the defendants? The fact that the John Porter Company had agreed, in May, to assume the payment of these liens, and had taken the note and stock of John Porter as indemnity, is not inconsistent with the claim that a contract was made, in December following, that Mack and Boren would relieve Porter from any fur-

ther liability in respect to said liens. That contention was the main issue that was being tried. Boren had already sworn that he referred to this obligation of the company to pay the liens in his interview with Stewart; and, when the court allowed him to prove that the John Porter Company had, prior to the interview with Stewart, assumed the payment of these liens, that was all that could properly be asked. It was the apparently needless iteration of that proof that led the court to the exclusion of any further testimony upon that point. We are of opinion that the testimony admitted by the court allowed a sufficient explanation of Boren's remark to Stewart, and do not find, in these exceptions, grounds for reversal.

The eleventh exception grows out of the refusal of the court to allow testimony that Porter, in May, 1891, had represented that the Stewart and Silvers liens did not amount to more than $9,000. No proof was offered to show that, in December following, at the time when the alleged contract was made, the defendants were ignorant of the true amount of the liens, and that they were misled by those representations into the making of the contract, which, otherwise, they would not have entered into. If that was the contention, proof of a misstatement would be relevant; otherwise, not.

The fourteenth exception relates to a conversation at a meeting, on January 11, 1892, whereat James M. Porter claims that Boren had made certain admissions. Boren denied that he had made such admissions, and stated that the object he had in view in going to that meeting was to settle a personal account with John Porter, and that, upon Porter's refusal, he threatened to sue him. Plaintiff's counsel objected to witness repeating the threat, and the court rebuked the witness, and sustained the objection to so much of the answer as is in these words: "Unless you settle my account, I will sue you before the sun goes down." This is the ground of an exception. There does not appear to be any merit in this exception.

The fifteenth, sixteenth, and seventeenth exceptions relate to the exclusion of conversations between the defendant Mack and Vance, the president of the bank, some time in the fall of 1891, prior to meeting at Steubenville, in which Mack had said that he would not make any offer for the stock if Porter had anything to do with it; that he would only buy it if it belonged to the bank, and that he would not have any negotiations with Porter for the stock. Porter was not present at any of these conversations. As it is a matter of common knowledge that men frequently change their minds, and as it is in evidence that Lance, the agent of Mack, did enter into negotiations of some kind with Porter, at the end of December, at Steubenville, with reference to this very stock, it is difficult to see what bearing these antecedent conversations have upon the question at issue. If there was a contract made at Steubenville, all previous negotiations are merged in that contract, except in so far as they may tend to make clear any ambiguity as to the terms. It is not claimed by the defendants that there is such ambiguity. They deny that any contract at all was made at that meeting. If that is so, then the conversations are irrelevant. It cannot be seriously

contended that a man can escape the performance of a contract by proof that, some time before it was alleged to have been made, he had declared that he would not make it.

This testimony, and some other testimony, the rejection of which we have already considered, and determined to have been properly excluded, because of its irrelevancy, is claimed to have been properly admissible as part of the res gestæ. The object to which it was addressed was, not to explain or elucidate the contract which was in issue, but to show that no contract was made at all. They endeavor to show that the purchase of the 710 shares of stock was a simple transaction between Mack and the bank. If that is true, it is a good defense to this action; but, like all other defenses, it must be established by competent testimony. Upon such an issue, it can scarcely be pretended that a declaration, not under oath, of one of the parties to that transaction, can affect the rights of any party not present when such declaration is made. It is elemental that such declarations are inadmissible. Declarations are not admissible to prove a past occurrence. An isolated conversation, or an isolated act done, or a statement of intention respecting it, is no proof of the fact itself. In so far as this kind of testimony tended to show that the defendant bought from the bank, he had the benefit of it in the evidence, which was admitted,—in the written agreement, showing, on its face, that the bank sold the stock to Mack. This action was for the enforcement of a contract alleged to have been made at Steubenville, and witnesses competent to prove it testified to that contract. Here is a single act, well defined as to time. To be a part of the res gestæ of that act, the declarations must have been made at the time of the act done, and calculated to explain it, and unfold its true nature and quality. As such, they are admissible as original evidence, because they are regarded as part of the principal act, explaining whatever may be equivocal in its character. They grow out of the act itself, and serve to illustrate it. There may be cases, where the transaction is of a continuous nature, where the limitations as to time would not be so restricted, and admissions of declarations made after the event would be governed by those principles of law which the particular case might require. In the case under consideration, the declarations sought to be introduced related to facts detached from the principal issue, and did not grow out of it, or serve to illustrate it, or constitute a part of it. To be admitted as evidence, other principles of law must be invoked than that they are a part of the res gestæ. We know of none that would allow the admission of such testimony, and its exclusion, therefore, is not error.

We come now to the consideration of exceptions (2, 3, and 4) relating to the allowance of amendments pending the trial, and the refusal of the continuance asked on account thereof. The purpose of the amendments was to make the declaration conform to the proof. The first one alleged that it was a part of the agreement at Steubenville that the defendant Boren would take the stock pledged to him at 65 cents on the dollar. As there was no dispute on that point,

and as the defendant Boren did take the stock, and credit Porter with that amount, no breach being charged, or claim made on account thereof, the amendment was properly allowed; and so as to the second amendment, which allowed the plaintiff to state, in his declaration, that it was also agreed that the indebtedness of Porter to the John Porter Company on the open account should be canceled. These amendments did not, nor did either of them, state a separate cause of action, nor claim damages for separate breaches. It was claimed that they were all a part of the same transaction. The contract at Steubenville was a single contract, containing various provisions, none of which constituted separate causes of action, upon which separate actions could be brought. The amendments did not bring in any foreign substantive causes of action, and, as they related to and formed part of the original cause of action, they became, properly, a part of the declaration, charging a breach of the single contract, which was the subject of the litigation. In matters of this nature, the courts of the United States are governed by the laws of the state where the litigation is had, and the Code of West Virginia (section 12, c. 125) provides that:

"The plaintiff may of right amend his declaration or bill at any time before the appearance of the defendant, or after such appearance, if substantial justice will be promoted thereby. But if such amendment be made after the appearance of the defendant the court may impose such terms upon the plaintiff as to a continuance of the cause and the payment of the cost of such continuance as it may deem just."

There is nothing in the record to show that the allowance of the amendments operated to the disadvantage of the defendants, that it was a surprise, and that a continuance was necessary in order that additional testimony could be provided to meet any new aspect of the case made by the amendments. In fact, as all of the witnesses who were present at the time when the alleged contract was made, or who could testify as to the terms of it, were already before the court, and had already been examined as to their knowledge of the matters to which the amendments related, no case is made which takes it out of the general rule that the granting or refusing of continuance is within the discretion of the trial judge, not reviewable in this court.

The last exception assigns as error the including in the verdict of the amount of the open account, $400, and interest thereon. This suit was upon a contract which provided that the defendants should pay the amount of liens upon the property of the company for which the plaintiff was liable, and the open account. Judgment had been recovered against the plaintiff by the company, which judgment included both liens and open account; and the cause of action in this case was the breach of the contract, which consisted in the procuring of that judgment. If the plaintiff was entitled to recover at all, he was entitled to recover the whole amount of that judgment.

Our opinion, upon the whole case, is that the judgment of the court below should be affirmed; and it is so ordered and adjudged.